IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JICARILLA APACHE NATION )<br>507 Hawks Drive )<br>Dulce, New Mexico 87528 )<br>            )<br>     Plaintiff     ) <br>v.          )<br>            )<br>U.S. DEPARTMENT OF THE INTERIOR )<br>1849 C Street, N.W. )<br>Washington, D.C. 20240 )<br>            )<br>DIRK KEMPTHORNE )<br>SECRETARY OF THE INTERIOR )<br>U.S. Department of the Interior )<br>1849 C Street, N.W. )<br>Washington, D.C. 20240 )<br>            )<br>     Defendants     )<br>_____) | Case: 1:08-cv-00316-JDB<br>Assigned To: John D. Bates<br>Assign. Date : 4/16/2008<br>Description: Admn. Agency Review |

## AMENDED COMPLAINT FOR DECLARATORY RELIEF

### Introduction

1.  Plaintiff, the Jicarilla Apache Nation ("Jicarilla"), brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701- 706, seeking judicial review of final agency action. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment setting aside the final decision of Defendant, the Department of the Interior ("Department"), issued by the Interior Board of Land Appeals ("IBLA") in *Merit Energy Co. v. Minerals Management Service*, 172 IBLA 137 (2007) ("Merit"), as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, *see* 5 U.S.C. § 706, and as a breach of the Department's trust obligation to enforce Indian oil and gas leases.

## Parties

2.    Plaintiff Jicarilla Apache Nation is a federally recognized Indian tribe with a reservation located in northwest New Mexico. Jicarilla is the lessor under various oil and gas mining leases issued beginning in the early 1950's under the Indian Mineral Leasing Act of 1938 ("IMLA"), 25 U.S.C. §§ 396a- 396g. Pursuant to the terms of the leases, Jicarilla is entitled to royalties for oil and gas produced on the Jicarilla Apache Reservation.

3.    Defendant United States Department of the Interior is an agency of the federal government. The Department, through its Minerals Management Service ("MMS") and the Bureau of Indian Affairs ("BIA"), is responsible for approving and administering Indian leases and ensuring that the correct amount of royalties is paid to tribes, including Jicarilla. *See, e.g.*, 25 U.S.C. § 396(b) (IMLA); 30 U.S.C. § 1701 (Federal Oil and Gas Royalty Management Act of 1982, or "FOGRMA"); 25 C.F.R. Part 211 (2007) (BIA mineral leasing regulations for Indian lands); 30 C.F.R. Parts 202, 206 (2007) (MMS royalty regulations). The Department is required to conduct such activities consistent with its trust responsibility to federally recognized Indian tribes as discussed in paragraphs 9-11 herein.

4.    Defendant Dirk Kempthorne is the Secretary of the Interior and is charged by law with carrying out the duties, responsibilities, and decisions of the Department.

## Jurisdiction

5.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1362. The defendants have consented to suit pursuant to 5 U.S.C. § 702. The decision for which review is sought is a final agency action. *See* 43 C.F.R. 4.403 (2006) ("A decision of the Board [of Land Appeals] shall constitute final agency action and be effective upon the date of issuance, unless the decision itself provides otherwise.").

## Venue

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), (e)(1), and (e)(2) and 5 U.S.C. § 703.

## Statement of Facts

**A.      The Jicarilla Leases**

7.      Pursuant to the IMLA, Jicarilla entered into leases with Merit Energy Company ("Merit") for oil and gas production on the Jicarilla Apache Reservation. These leases were entered into on BIA Standard Lease Form 5-157 ("Lease"), and were approved by the Department. In exchange for royalty payments as specified in the lease, the lessee is granted "the exclusive right and privilege to drill for, mine, extract, remove, and dispose of all the oil and natural gas deposits" on the leased portion of the Jicarilla Apache Reservation. Lease ¶ 1.

8.      Royalties from Jicarilla's oil and gas leases are of vital importance to the tribe, as they provide about half of all the revenue used to pay for essential government services on the Jicarilla Apache Reservation, such as police, tribal courts, health care, and education.

9.      The United States, including its agencies, has a fiduciary duty to tribes which extends to the management of tribal resources, including the management of tribal oil and gas. *E.g., Seminole Nation v. United States*, 316 U.S. 286, 296-97 (1942) (the United States has a "moral obligation of the highest responsibility and trust" to Indian tribes and its "conduct, as disclosed in the acts of those who represent it in dealings with Indians, should therefore be judged by the most exacting fiduciary standards"); *Jicarilla Apache Tribe v. Supron Energy Corp.*, 782 F.2d 855 (10th Cir. 1986) *(en banc) (adopting dissenting opinion at* 728 F.2d 1555), *modified*, 793 F.2d 1171, *cert, denied*, 479 U.S. 970 (1986) (Secretary of the Interior must act as a fiduciary in the administration of tribal oil and gas reserves).

10.     Accordingly, FOGRMA states that the "Secretary should aggressively carry out his trust responsibility in the administration of Indian oil and gas." 30 U.S.C. § 1701(a)(4); *see BP America Production Co. v. Burton*, 127 S.Ct. 638, 648 (2006).

11.     The MMS royalty regulations also acknowledge the United States' trust responsibility with respect to the management of Indian oil and gas, providing that:

> the regulations in this subpart are intended to ensure that the trust responsibilities of the United States with respect to the administration of Indian oil and gas leases are discharged in accordance with the requirements of the governing mineral leasing laws, treaties, and lease terms.

30 C.F.R. § 206.170(e)(2007).

12.     The leases at issue in this case contain a provision known as the "major portion price" provision, which provides as follows:

> 'Value' for the purposes hereof [the calculation of royalties] may, in the discretion of the Secretary, be calculated on the basis of the highest price paid or offered ... at the time of the production for the major portion of the oil of the same gravity, and gas, and/or natural gasoline, and/or all other hydrocarbon substances produced and sold from the field where the leased lands are situated.

Lease ¶ 3(C).

13.     As provided in the leases and in discharge of its trust responsibilities, MMS determined major portion prices for gas from the Jicarilla Apache Reservation.

14.     Pursuant to its statutory and trust responsibilities, MMS audited the leases between Merit and Jicarilla. That audit uncovered several problems with Merit's royalty calculations for oil and gas production on those leases.

15.     Specifically, the MMS audit determined that:

> Merit failed to consider major portion value for gas produced and sold from the leases; it failed to perform dual accounting; it improperly claimed deductions from royalties for gas sales to Tristar Gas Marketing Company; and it failed to report gas sales as processed for the Tribe.

4

*Merit*, 172 IBLA at 139.[1]

**B.    The Order to Perform**

16.    On February 16, 1999, MMS issued an Order to Perform ("OTP") to Merit, directing it to perform dual accounting using major portion prices to calculate royalties on the Jicarilla leases at issue for the period January 1984 through June 1995; to perform dual accounting (without using major portion prices) for the period July 1995 through September 1995; and to pay any additional royalties due. *Id.*

17.    From 1998 - 1999, MMS issued similar major portion orders to perform to approximately 40 other oil and gas companies. *See, e.g., Robert L Bayless*, MMS-98-0132- IND (Dec. 22, 2000); *Merrion Oil & Gas Corp.*, MMS-998-0228-IND (Dec. 22, 2000); *Dugan Production Co.*, MMS-98-01130-IND (Dec. 22, 2000); Vastar Resources Inc., MMS- 98-0131-IND (March 28, 2007).

18.    In the OTP itself, Merit was notified of its right to appeal the OTP under 30 C.F.R. Part 290. *See Merit*, 172 IBLA at 139-40.

19.    Under 30 C.F.R. § 290.105(a) (1999), a lessee may appeal an MMS Order to Perform "within 30 days from service of the order."[2] *See also* § 290.102 (1999) ("Order" includes "[a]n order to pay or to compute and pay" royalties).

---

[1] When natural gas is produced, it contains both gas and natural gas liquids: the gas can be sold either in its "wet" state at the wellhead ("casinghead gas") or after processing, when the liquids are separated from the gas. Under dual accounting, the lessee must calculate both (1) the value of the unprocessed, or casinghead, gas, and (2) the combined values of the processed gas and separated liquids after processing (less allowed processing costs), and pay royalties as a percentage of the higher of the two values. *See* Lease ¶ 3(c) (requiring royalty to be computed "on the value of gas or casinghead gas, or on the products thereof..., whichever is the greater"); 30 CFR §§ 206.152(h), 206.153(h) (1988) (the dual accounting provision in effect during the audit period).

[2] This Amended Complaint refers to the 1999 version of the regulations because it was the version in effect during the relevant period.

5

20.   Under 30 C.F.R. § 290.105(b) (1999), a lessee "may not request and will not receive an extension of time for filing the Notice of Appeal."

21.   30 C.F.R. § 290.105(c) (1999) provides for a brief grace period regarding receipt of a Notice of Appeal by the proper official, to account for delivery problems within the Department, but still requires the Notice of Appeal to have been delivered on time.

22.   Under 30 C.F.R. § 290.105(d) (1999), "If the Notice of Appeal is filed after the grace period provided in paragraph (c) of this section and was not transmitted to the proper office before the filing deadline in paragraph (a) of this section, the *MMS* Director will not consider the Notice of Appeal and the case will be closed."[3]

23.   Some lessees subject to the major portion orders to perform referenced in paragraph 16 complied with the orders and paid additional royalties, some settled with *MMS* and Jicarilla, and many appealed the orders pursuant to 30 C.F.R. Part 290. *See, e.g., Robert L. Bayless*, MMS-98-0132-IND (Dec. 22, 2000); *Merrion Oil & Gas Corp.*, MMS-998-0228-IND (Dec. 22, 2000); *Dugan Production Co.*, MMS-98-01130-IND (Dec. 22, 2000); *Vastar Resources Inc.*, MMS-98-0131-IND (March 28, 2007).

24.   Merit did not appeal the OTP under 30 C.F.R. Part 290.

C.   **The Notice of Noncompliance**

25.   On August 19, 1999, the MMS issued a Notice of Noncompliance ("NON") to Merit charging Merit with failure to comply with the OTP.

26.   On September 15, 1999, Merit requested an extension of time for complying with the OTP.

---

[3] For orders involving Indian leases, appeal is to the Deputy Commissioner of Indian Affairs rather than the MMS Director. 30 C.F.R. § 290.105(g).

6

27.     MMS granted Merit a 30-day extension of time to comply with the OTP. *See Merit*, 172 IBLA at 140.

27.     30 C.F.R. § 241.54 (1999) provides that a party may request a hearing on the record on a NON by filing the request within 30 days of receipt of the NON.

28.     On September 22, 1999, Merit requested a hearing on the NON pursuant to 30 C.F.R. Part 241 and petitioned to stay the accrual of penalties during the appeal. *See Merit*, 172 IBLA at 140.

29.     The parties stipulated to a stay of the accrual of penalties, and the stay was granted on December 23, 1999. *See id.*

30.     On November 17 and 18, 1999, Merit responded to the NON by recalculating royalties, but did not use the major portion prices established by MMS for the Jicarilla Apache Reservation. *See id.*

### D.     Proceedings at the Hearings Division of the Office of Hearings and Appeals

31.     The hearing on the NON was assigned to an Administrative Law Judge ("ALJ") in the Hearings Division of the Office of Hearings and Appeals.

32.     Merit raised a number of issues before the ALJ, and the ALJ issued a number of decisions in response. The decision on appeal here concerns whether the ALJ had jurisdiction, in the context of a Part 241 hearing on the record on the NON, to consider the validity of the underlying OTP, which Merit had failed to appeal pursuant to 30 C.F.R. Part 290.

33.     During the proceedings at the Hearings Division, MMS argued that the only means of appealing the validity of the OTP was pursuant to 30 C.F.R. Part 290, that Merit failed to appeal the OTP pursuant to 30 C.F.R. Part 290, that the time limit for appeal had expired and

was jurisdictional, and that the doctrine of administrative finality prevented any further consideration of the validity of the OTP.

34.     MMS also argued that since the only method for appealing the substance of an OTP is to appeal to the Deputy Commissioner of Indian Affairs and then to the IBLA pursuant to 30 C.F.R. Part 290, the Hearings Division ALJ did not have jurisdiction to address Merit's challenges to the OTP in the context of its challenge to the NON.

35.     The ALJ agreed with the latter argument and held he did not have jurisdiction to consider Merit's challenges to the substance of the OTP.

36.     The ALJ did, however, consider whether the OTP was properly served on Merit.

37.     The ALJ found that the OTP had been properly served on Merit.

E.      **Proceedings Before the Interior Board of Land Appeals**

38.     Merit appealed the ALJ's decision to the IBLA.

39.     With regard to the procedural question—whether the OTP was properly served—the IBLA affirmed the ALJ's finding that service was appropriate.

40.     On the jurisdictional question—whether the ALJ had authority to consider Merit's challenges to the substance of the OTP itself—the IBLA reversed.

41.     The IBLA concluded that while a party may appeal an OTP under 30 C.F.R. Part 290 within thirty days of service, it can also let the time for appeal expire, and simply wait for a NON to be issued.

42.     Once the NON is issued, the IBLA reasoned, the party has a second chance to appeal, this time under 30 C.F.R. Part 241, and may raise issues regarding both the NON and the unchallenged OTP.

43. The IBLA then remanded to the ALJ with instructions to consider Merit's challenges to the substance of the underlying OTP. *See Merit*, 172 IBLA at 156.

### Count One

44. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 2-43 of this Complaint.

45. The Department is an agency under the APA, 5 U.S.C. § 701(b)(l).

46. The IBLA's decision on the jurisdictional question in *Merit* is a final action of the Department from which no further administrative appeal is available. See 43 C.F.R. § 4.403 ("A decision of the [IBLA] shall constitute final agency action . . . unless the decision itself provides otherwise.").

47. Final agency action for which there is no other adequate remedy in a court is subject to judicial review. 5 U.S.C. § 704.

48. The IBLA's interpretation of the regulations at 30 C.F.R. Part 241 is inconsistent with the regulations at 30 C.F.R. Part 290.

49. The IBLA's interpretation of the regulations at 30 C.F.R. Part 241 renders meaningless the time limit and procedures for appeals under 30 C.F.R. Part 290.

50. The IBLA's interpretation of the regulations at 30 C.F.R. Part 241 creates the possibility of inconsistent rulings under 30 C.F.R. Part 241 and Part 290.

51. The IBLA's decision on the jurisdictional question in *Merit* is therefore arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of 5 U.S.C. § 706.

### Count Two

52.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 2-43 and 45-51 of this Complaint.

53.     The defendants' trust responsibility to Indian tribes, and in particular their trust responsibility to administer Indian oil and gas according to "not merely the minimal requirements of administrative law, but. . . also . . . the more stringent standards demanded of a fiduciary," *Supron*, 728 F.2d at 1563, is acknowledged by statute, regulation, and case law, as discussed in paragraphs 8-10.

54.     By allowing a party to challenge the validity of an OTP for a second time, in the very proceeding designed for enforcement of the OTP, the IBLA's interpretation of the regulations at 30 C.F.R. Part 241 places an excessive burden on MMS's enforcement capabilities and undermines MMS's trust obligation to enforce Indian leases.

55.     The defendants therefore violated their trust responsibility to the Jicarilla Apache Nation by failing to "aggressively carry out [their] trust responsibility in the administration of Indian oil and gas." *See* 30 C.F.R. § 206.170(e) (2007).

### Claim for Relief

WHEREFORE, Plaintiff Jicarilla Apache Nation hereby prays for: (1) a declaratory judgment setting aside the Department's decision in *Merit Energy Co. v. Minerals Management Service*, 172 IBLA 137 (2007), and declaring the decision unlawful and of no force or effect; and (2) an award to Plaintiff of attorneys' fees and costs incurred related to this litigation, and any such other relief as the Court deems just and proper.

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/ Steven D. Gordon

Steven D. Gordon
D.C. Bar No. 219287
Lynn E. Calkins
D.C. Bar No. 445854
Stephen J. McHugh
D.C. Bar No. 485148
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, DC 20006-6801
Phone: (202) 955-3000
Fax: (202) 955-5564
Email: steven.gordon@hkaw.com
Email: lynn.calkins@hklaw.com
Email: stephen.mchugh@hklaw.com

Counsel for Plaintiff

# 5277230_v1